IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DEBRA A. LUTZ,

      Plaintiff,

v.

CI-DELL PLASTICS, INC.,

      Defendant.

CIVIL ACTION NO. 21 CV 334

Jury Trial Demanded

## COMPLAINT

NOW COMES the Plaintiff, Debra A. Lutz, by and through her attorneys, McDonald & Kloth, LLC, and as and for her Complaint against the Defendant, Ci-Dell Plastics, Inc., alleges and shows to the court as follows:

### NATURE OF T HE ACTION

This action arises under Title VII of the Civil Rights Act of 1964 (hereinafter, "Title VII"), as amended, the Americans with Disabilities Act (hereinafter, "ADA"), the Age Discrimination in Employment Act (hereinafter, "ADEA"), the Family and Medical Leave Act (hereinafter, "FMLA"), Consolidated Omnibus Budget Reconciliation Act (hereinafter, "COBRA"), Chapter 109 of the Wisconsin Statutes (hereinafter, "Chapter 109"), and the common law of the State of Wisconsin to correct unlawful employment practices on the basis of gender, disability, age, opposition to discrimination in the workplace, interference and retaliation under the FMLA, and unpaid wages under Chapter 109, and to provide appropriate relief to the Plaintiff who was adversely affected by such practices. Plaintiff seeks a permanent injunction against Defendant; reinstatement; lost wages, employment benefits, and other compensation; non-pecuniary compensatory damages; punitive damages; liquidated damages; costs; attorney's fees; and any other such relief the Court may deem appropriate.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper pursuant to 28 USC §1331. This action is authorized and instituted pursuant to Title VII (42 USC §2000e-2 et seq.), ADA, (42 U.S.C. § 12101 et seq., ADEA (29 U.S.C. § 621 et seq.), FMLA (29 U.S.C. § 2601 et seq.), and COBRA (29 U.S.C. § 1161 et seq.).

2. This court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all other claims arise in and are so related that they form part of the same case or controversy as the aforementioned claims.

3. Venue is proper in this Court pursuant to 28 USC §1391(b) and (c). The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin, and the employment records relevant to such practices are maintained and administered within the Eastern District of Wisconsin.

## PARTIES

4. The Plaintiff, Debra A. Lutz ("Lutz") is an adult resident of the State of Wisconsin with a residence located at 6966 Forseth Court, West Bend, Wisconsin 53090.

5. The Defendant, Ci-Dell Plastics, Inc. ("Ci-Dell"), is a Wisconsin corporation with its principal place of business 6301 W. Executive Drive, Mequon, Wisconsin 53092.

## STATEMENT OF FACTS

6. Lutz was employed with Ci-Dell from July 1, 1999 through October 22, 2019.

7. Lutz performed the position of Office Manager for Ci-Dell starting in or around May 2003 and continuing to the termination of her employment on October 22, 2019.

8. Lutz performed Ci-Dell's human resources functions at various times throughout her employment including, but not limited to, from 2003 through mid-2016, and from mid-2017 through early 2019.

2

9. Lutz was diagnosed with Chronic Lymphocytic Leukemia (hereinafter, "CLL") in April 2005.

10. Ci-Dell became aware of Lutz's CLL in 2006.

11. Lutz was diagnosed with Idiopathic Thrombocytopenic Purpa (hereinafter, "ITP") in or around April 2005.

12. Ci-Dell became aware of Lutz's ITP diagnosis in April 2006.

13. Lutz's CLL and ITP substantially limits her ability to perform normal, everyday activities such as bathing, grooming, thinking, driving, walking, typing, eating, lifting, pulling, etc.

14. Lutz discussed her CLL and ITP with Ci-Dell owner, Ken Cihlar, Sr. (hereinafter, "Cihlar Sr."), and his son, Ken Cihlar, Jr. (hereinafter, "Cihlar Jr.") at various times throughout her employment.

15. In May 2018, Ci-Dell removed Lutz from its group health insurance plan and used a third-party broker to obtain insurance for her through the Affordable Care Act (hereinafter, "ACA"). Cihlar Sr. told Lutz that she had to be removed from the group health insurance plan because her health condition was a "liability" to Ci-Dell.

16. Cihlar Sr. told Lutz that he would continue to pay 75% of her health insurance premium under the ACA as it did when she had coverage through Ci-Dell's group health insurance plan.

17. Cihlar Sr. also told Lutz that he would compensate her for the amount of the deductible she already had paid in 2018 under the Ci-Dell group health insurance plan.

18. Cihlar Sr. and Ci-Dell failed to compensate Lutz for this amount of the deductible already paid by Lutz under the group health insurance plan.

19. Lutz told Cihlar Sr. that she did not want to be removed from the group health insurance plan.

20. Cihlar Sr. told Lutz that if she remained a member of the group health insurance plan, Ci-Dell would be forced to reduce the amount it paid to all employees for their group health insurance plans.

21. Cihlar removed Lutz from the group health insurance plan.

22. The third-party insurance broker told Lutz that she may request to be added back to the Ci-Dell group health insurance plan at a later date.

23. Lutz's deductible under the ACA plan was higher than the deductible under Ci-Dell's group health insurance plan.

24. In January 2019, Lutz requested to be put back on Ci-Dell's group health insurance plan.

25. Cihlar Sr. told Lutz that he would not put her back on Ci-Dell's group plan.

26. Lutz's medical provider provided Ci-Dell with a letter dated January 24, 2019 advising Ci-Dell that Lutz was under the provider's care at Kraemer Cancer Center for "lymphoma and thrombocytopenia" and that Lutz "may be unable to work" "due to symptoms of extreme fatigue, pain and weakness" related to her CLL and ITP and the treatment thereof.

27. Lutz was hospitalized for multiple days on two separate occasions in February 2019 to obtain treatment for her CLL and ITP.

28. Lutz's job duties did not require her to perform all her work in the office. The majority of her work duties could be performed remotely.

29. Ci-Dell permitted Lutz to work from home at various times throughout her career.

30. Ci-Dell permitted other employees to work from home at various times for various reasons.

31. Prior to March 2019, Ci-Dell permitted Lutz to work from home at times when her diseases and/or treatment for the diseases made it impossible or extremely difficult for Lutz to come into the office to perform her job.

32. In early March 2019, Cihlar Sr. told Lutz that Ci-Dell no longer would compensate her for work she performed at home.

33. During the same conversation, Lutz told Cihlar Sr. that she could not have regular office hours owing to her diseases and treatment. Lutz further told Cihlar Sr. that she could continue performing the same work at home and come into the office in the evening hours when her diseases and treatment did not affect her as much.

34. Lutz continued to perform work for Ci-Dell from home and at the office in the evening hours from March through May 1, 2019.

35. At various times throughout her employment Cihlar Sr. told Lutz that he needed her to be present in the office 100% of the time. From time to time. Cihlar Sr. made this statement in a loud and aggressive tone.

36. Lutz told Cihlar Sr. that she was able to perform her job duties from home and in the office during the evening hours for the brief period in which she was receiving treatment for her diseases.

37. Cihlar Sr., Cihlar Jr., and Ci-Dell were aware that Lutz continued to perform work from home and at the office in the evening hours from March through May 1, 2019.

38. Ci-Dell did not pay Lutz for any work she performed at home from early March 2019 through May 1, 2019.

39. During this early part of 2019 Ci-Dell had a consultant performing some of Lutz's work duties and using Lutz's workstation at the office.

40. Lutz informed Ci-Dell that the treatment she was receiving substantially impaired her immune system and that she must limit unnecessary exposure to additional bacteria and contaminants. Lutz requested Ci-Dell to have the consultant work at a different workstation as an accommodation to limit unnecessary bacteria and contaminants at her workstation.

41. Ci-Dell indicated that it would look into Lutz's request, but never moved the consultant or otherwise followed up with Lutz.

42. Lutz's medical provider provided Ci-Dell with a letter dated April 25, 2019 advising Ci-Dell that Lutz was undergoing "chemotherapy for treatment of her CLL" and, as a result, may be unable to work because of the "severe fatigue, nausea, diarrhea, headaches, poor appetite, dizziness and weakness."

43. On May 1, 2019, Lutz went into the office in the late evening hours to perform some work. She immediately noticed that work files and personal items had been removed from her workstation. Lutz also noticed that files on her computer were missing and/or had been moved.

44. Nolan Cihlar (Cihlar Sr.'s son) entered the office the following morning, May 2, 2019, and approached Lutz at her workstation.

45. Lutz and Nolan Cihlar spoke for a moment before Nolan Cihlar contacted Cihlar Sr. by telephone.

46. Cihlar Sr. then called Lutz on her work telephone at her workstation. Cihlar Sr. asked Lutz how she was feeling and how work was going. Lutz told Cihlar Sr. that it was difficult for her to perform her job because work files were missing, computer files were missing and/or had been moved, and her personal belongings had been moved or were missing.

47. Lutz again stated to Cihlar Sr. that she could perform her job duties while working form home and in the evening hours during the brief time in which she was receiving treatment.

48. Cihlar Sr. stated that he needed her in the office 100% of the time.

49. Lutz informed Cihlar Sr. that she would need to pursue medical leave because she could not be in the office 100% of the time and Ci-Dell refused to accommodate her disabilities by allowing her to work from home and during the evening hours.

50. Lutz specifically told Cihlar Sr. that she was in no way quitting her job but needed to avail herself of the medical leave as a result of Ci-Dell's refusal to accommodate her disabilities or pay her for work performed at home.

51. Cihlar Sr. confirmed that Lutz may take a medical leave.

52. Lutz also requested Cihlar Sr. to send her the short-term disability form with the employer portion completed. Ci-Dell sent the short-term disability forms on October 3, 2019.

53. Lutz retrieved the few reaming personal items from her former workstation and left the office.

54. Lutz called Ci-Dell in June 2019 because she noticed that Ci-Dell had not made any payments toward her health insurance. Previously, Ci-Dell paid Lutz the equivalent of 75% of her health insurance premium.

55. Lutz spoke directly with Cihlar Jr. regarding the missing health insurance payment. Cihlar Jr. stated that he was leaving on vacation and would look into the missing health insurance payments and follow up with Lutz upon his return.

56. Neither Cihlar Jr. nor anyone else from Ci-Dell contacted Lutz regarding the missing health insurance payments.

57. Lutz called Ci-Dell in July to discuss her job and the missing health insurance payments.

58. No one from Ci-Dell provided Lutz with any information regarding her inquiries in July.

59. Lutz believes she called Ci-Dell in August to discuss her job and the missing health insurance payments.

60. No one from Ci-Dell provided Lutz with any information regarding her inquiries in August.

61. Lutz called Ci-Dell in September to discuss her job and the missing health insurance payments. Lutz spoke with Suzanne Stommel, Human Resources Representative for Ci-Dell, and requested to be placed on Ci-Dell's group health insurance plan. Stommel said she would speak with Cihlar about her request and get back to her. Neither Stommel nor anyone else from Ci-Dell contacted Lutz regarding her request to be placed back on Ci-Dell's group health insurance plan or to discuss her job.

62. Most of Lutz's calls to Ci-Dell in July, August, and September went into someone's voicemail with no return call.

63. By October 2019 Lutz became frustrated with Ci-Dell's refusal to return her calls regarding her job and missing health insurance payments.

64. In October 2019, Lutz called Cihlar Sr. on his personal home telephone number to discuss her return to work and the missing health insurance payments.

65. During this conversation, Lutz told Cihlar Sr. that she had been calling Ci-Dell for months regarding her job and missing health insurance payments with no return calls.

66. Cihlar Sr. asked Lutz several questions about her health and life in general. Cihlar Sr. then told Lutz that she no longer had a job with Ci-Dell.

67. Lutz was shocked at this information and asked how she no longer could have a job with Ci-Dell.

68. Cihlar Sr. told Lutz that she allegedly had quit in May 2019.

69. Lutz told Cihlar Sr. that his statement was false and that he knew it was false.

70. On October 22, 2019 Lutz received a letter from Ci-Dell dated October 16, 2019 "clarify[ing] the situation with respect to [her] employment" (hereinafter, "Termination Letter").

71. The Termination Letter incorrectly stated that Cihlar Sr. "kept [her] personal [health information] confidential." Very shortly after disclosing her diagnoses of CLL and ITP to Cihlar Sr., the third-party accountant for Ci-Dell contacted Lutz at work to say he was sorry about her diagnoses and told her that Cihlar Sr. had told him about her diagnoses. Several other employees at Ci-Dell also approached Lutz at work and disclosed that they were aware of her diagnoses.

72. The Termination Letter incorrectly stated that Lutz had not made "requests for time off or formal modifications to [her] work schedule." Lutz had made several accommodation requests to modify her work schedule, work from home, work evening hours in the office, and have a clean and safe workstation during her employment.

73. The Termination Letter incorrectly stated that Lutz "did not make a formal request for a reasonable accommodation for [her] illness" and that Ci-Dell had not "received any formal request for a modification of [her] work hours, or any other type of accommodation, related to any illness that [she] might have." Lutz had made several accommodation requests to modify her work schedule, work from home, work evening hours in the office, and have a clean and safe workstation during her employment.

74. The Termination Letter incorrectly stated that Lutz did not request a leave of absence. Ci-Dell had received two letters directly from Lutz's health care providers advising Ci-Dell of Lutz's need for medical leave. Lutz discussed her need for medical with Cihlar Sr. on a number of occasions and specifically requested medical leave and short-term disability leave on May 2, 2019 following Ci-Dell's removal of work files and personal belongings from her workstation.

75. The Termination Letter incorrectly stated that Lutz did not "initiate" any communication with Ci-Dell regarding her work schedule. Lutz was in continuous contact with Ci-Dell throughout the latter part of 2018 and into 2019 as her health condition grew worse. Lutz

made several accommodation requests and discussed her work schedule with Ci-Dell throughout her employment.

76. The Termination Letter incorrectly stated that Lutz "cleared out [her] desk and took all [her] personal possessions with [her]" on May 2, 2019 and "did not communicate to any member of management as to why [she] did this." Ci-Dell removed work files as well as many of Lutz's personal belongings from her workstation. Lutz took a few personal items with her on May 2, 2019 when she left on medical leave because of Ci-Dell's refusal to accommodate her disabilities.

77. The Termination Letter incorrectly stated that Lutz terminated her employment on May 1, 2019. Ci-Dell terminated Lutz's employment on October 22, 2019 by and through the Termination Letter.

78. The Termination Letter incorrectly stated that Lutz "did not reach out to Ci-Dell Plastics, Inc. for several weeks thereafter." Lutz made several telephone calls to Ci-Dell in June, July, August, September, and October to discuss her employment with Ci-Dell.

79. The Termination Letter incorrectly stated that Lutz violated the No-fault Attendance Policy by being absent from work for "three consecutive days of no call/no show." Ci-Dell refused to pay Lutz for work performed at home, and on May 2, 2019 removed her access to necessary computer files, removed physical work files, and removed personal property from Lutz's workstation. Lutz informed Ci-Dell that she would be forced to take a medical leave since Ci-Dell refused to accommodate her disabilities.

80. The Termination Letter incorrectly stated that Ci-Dell "consider[ed] [her] employment to have terminated on May 7, 2019 when [she] did not report to work or call in." Ci-Dell forced Lutz into medical leave; refused to respond to Lutz's continued inquiries regarding her employment in June, July, August, and September; continued to pay for Lutz's vision and dental insurance through October 2019; never told Lutz that her employment had

10

Case 2:21-cv-00334-PP   Filed 03/15/21   Page 10 of 19   Document 1

been terminated prior to October 22, 2019; and did not send Lutz any COBRA notification at any time.

81. The Termination Letter incorrectly stated that Lutz called Ci-Dell "to request a paycheck." Lutz called Ci-Dell to discuss her job and Ci-Dell's failure to pay its portion of her insurance premium.

82. The Termination Letter incorrectly stated that Lutz took short-term disability paperwork with her on May 1, 2019. Lutz requested this paperwork on May 2, 2019 and it was not provided by Ci-Dell until October 3, 2019.

83. The Termination Letter incorrectly stated that Cihlar Jr. "agreed to meet with [her] the week after his family vacation in mid-June to discuss and sign the [short-term disability] forms." Cihlar Jr. stated that he would look into Lutz's inquiry regarding Ci-Dell's failure to pay its portion of her insurance premium and get back to her. Cihlar Jr. never followed up with Lutz on this issue and never scheduled a meeting with Lutz.

84. The Termination Letter incorrectly stated that a meeting had been scheduled for Cihalr Jr. and Lutz to meet and that Lutz failed to meet with Cihlar Jr. at the appointed time. No meeting was scheduled between Lutz and Cihlar Jr. and Lutz did not miss any meeting with Cihlar Jr.

85. The Termination Letter incorrectly stated that Lutz did not "reach[] out to any member of management from that date until mid-September, when [she] again asked for the short-term disability paperwork. Lutz had contacted Ci-Dell in June, July, August, September, and October to discuss her job and missing insurance premium payments. In September 2019, Lutz also discussed the short-term disability form.

86. Lutz disputes nearly all information contained in the Termination Letter.

87. Lutz contacted Ci-Dell several times following her termination to request payment of her vacation time and the required notices under COBRA.

11
Case 2:21-cv-00334-PP   Filed 03/15/21   Page 11 of 19   Document 1

88. Ci-Dell did not return Lutz's calls.

89. Ci-Dell treated its female employees less favorably than its male employees.

90. Ci-Dell provided its male employees with regular performance reviews and pay increases.

91. Ci-Dell refused to provide its female employees with regular performance reviews and pay increases.

92. Other female employees including Sarah Wallner, Laurie Rabuck, and Shuan Poston did not receive regular performance reviews or pay increases.

93. Lutz continuously requested performance reviews and pay increases throughout her years of employment.

94. Ci-Dell refused to provide Lutz with regular performance reviews or pay increases.

95. The last performance review and pay increase to Lutz occurred approximately ten (10) years before her termination.

96. Ci-Dell treated older employees less favorably than its younger employees.

97. Lutz was born in year 1957.

98. Ci-Dell terminated Lutz and Rod White (age 63) in 2019 while retaining younger, less qualified employees.

99. Lutz complained of discrimination in the workplace including, but not limited to, disability discrimination, gender discrimination, age discrimination and race discrimination.

100. Lutz was present on numerous occasions when Cihlar Sr. made inappropriate and derogatory comments about African American employees, referring to them as "lazy" and demeaning their competence.

101. Lutz opposed Cihlar Sr.'s inappropriate and derogatory comments.

102. Lutz opposed Ci-Dell's refusal to provide her with a reasonable accommodation.

103. Lutz opposed Ci-Dell treating her less favorably based upon her disability.

104. Cihlar Sr. appeared agitated at Lutz's opposition to him making inappropriate and derogatory comments based upon race but did not stop making the derogatory comments.

105. All conditions precedent have been fulfilled for filing claims under the ADA, ADEA, and Title VII as Lutz received a Right to Sue Letter from the EEOC, dated December 16, 2020.

## STATEMENT OF LEGAL CLAIMS

## COUNT I – DISCRIMINATION AND RETALIATION UNDER ADA

106. Lutz incorporates paragraphs 1 – 105 as if fully set forth herein.

107. Lutz is an individual with a disability as defined by the ADA.

108. Ci-Dell is an employer as defined by the ADA.

109. Ci-Dell was aware that Lutz possessed a disability prior to 2019.

110. Lutz requested to work from home as an accommodation to her disability.

111. Lutz requested to work irregular office hours as an accommodation to her disability.

112. Lutz requested to work part time hours as an accommodation to her disability.

113. Lutz requested Ci-Dell to have the consultant working at her workstation moved to a different workstation as an accommodation to her disability.

114. Lutz's requests for accommodations were reasonable.

115. Lutz's requests for accommodations did not pose an undue hardship on Ci-Dell.

116. Ci-Dell refused to allow Lutz to work from home beginning in early March 2019.

117. Ci-Dell refused to allow Lutz to work irregular office hours beginning on May 1, 2019.

118. Ci-Dell treated Lutz less favorably than similarly situated, non-disabled employees.

119. Ci-Dell discriminated against Lutz based upon her disability.

120. Lutz opposed discrimination based upon her disability.

121. Ci-Dell took adverse employment actions against Lutz because she opposed discrimination.

122. Lutz has suffered and continues to suffer pecuniary and non-pecuniary damages as a result of Ci-Dell's unlawful actions.

123. The effect of the practices complained of in the foregoing paragraphs has been to deprive Lutz of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected status and protected activity.

124. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

125. The unlawful employment practices complained of in the foregoing paragraphs were done with reckless indifference to Lutz's federally protected rights.

126. All conditions precedent to filing this lawsuit have been satisfied, as the Equal Employment Opportunity Commission issued a Right to Sue Letter to Lutz on December 16, 2020.

**COUNT II – DISCRIMINATION AND RETALIATION UNDER TITLE VII**

127. Lutz incorporates paragraphs 1 – 105 as if fully set forth herein.

128. Lutz is a member of a protected class as she is female.

129. Ci-Dell treated male employees much more favorably than female employees.

130. Ci-Dell provided male employees with regular performance reviews and raises.

131. Ci-Dell did not provide female employees with regular performance reviews and raises.

132. Ci-Dell did not provide Lutz with regular performance reviews and raises.

133. Ci-Dell discriminated against Lutz based upon her sex in violation of Title VII.

134. Lutz opposed discrimination based upon her gender.

135. Ci-Dell took adverse employment actions against Lutz because she opposed discrimination.

136. Lutz has suffered and continues to suffer pecuniary and non-pecuniary damages as a result of Ci-Dell's unlawful actions.

137. The effect of the practices complained of in the foregoing paragraphs has been to deprive Lutz of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected status and protected activity.

138. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

139. The unlawful employment practices complained of in the foregoing paragraphs were done with reckless indifference to Lutz's federally protected rights.

140. All conditions precedent to filing this lawsuit have been satisfied, as the Equal Employment Opportunity Commission issued a Right to Sue Letter to Lutz on December 16, 2020.

## COUNT III – DISCRIMINATION AND RETALIATION UNDER ADEA

141. Lutz incorporates paragraphs 1 – 105 as if fully set forth herein.

142. Lutz is a member of a protected class as she is over forty (40) years old.

143. Ci-Dell was aware that Lutz was over 40 years old prior to 2019.

144. Ci-Dell treated Lutz less favorably than similarly situated employees who were substantially younger than Lutz.

145. Ce-Dell discriminated against Lutz based upon her age.

146. Lutz opposed discrimination based upon her age.

147. Ci-Dell took adverse actions against Lutz because she opposed discrimination.

148. Lutz has suffered and continues to suffer pecuniary and non-pecuniary damages as a result of Ci-Dell's unlawful actions.

149. The effect of the practices complained of in the foregoing paragraphs has been to deprive Lutz of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected status and protected activity.

150. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

151. The unlawful employment practices complained of in the foregoing paragraphs were done with reckless indifference to Lutz's federally protected rights.

152. All conditions precedent to filing this lawsuit have been satisfied, as the Equal Employment Opportunity Commission issued a Right to Sue Letter to Lutz on December 16, 2020.

**COUNT IV – INTERFERENCE AND RETALIATION UNDER FMLA**

153. Lutz incorporates paragraphs 1 – 105 as if fully set forth herein.

154. Lutz is an eligible employee under the FMLA, as she had worked for Ci-Dell for over one year, was employed for at least 1,250 hours of service, and Ci-Dell meets the definition of a covered employer under the FMLA.

155. Lutz qualified for leave under the FMLA.

156. Ci-Dell was aware of Lutz's need for leave under the FMLA.

157. Ci-Dell interfered with and restrained Lutz's use of FMLA leave by refusing to offer Lutz FMLA leave or otherwise provide Lutz with a notice of her FMLA rights as required by law.

158. As a result of the aforementioned willful violations of the FMLA, Lutz is entitled to payment of lost wages and benefits, and an additional, equal amount as liquidated damages in accordance with 29 U.S.C. § 2617(a)(1).

159. Pursuant to 29 U.S.C. § 2617(a)(3), Lutz is entitled to reimbursement of the costs and attorney's fees expended in successfully prosecuting this FMLA action.

## COUNT V – VIOLATION OF COBRA

160. Lutz incorporates paragraphs 1 – 105 as if fully set forth herein.

161. Ci-Dell is a covered employee as defined by the COBRA.

162. Lutz was an employee of Ci-Dell as defined by the COBRA.

163. Ci-Dell was required to provide Lutz with an election notice under the COBRA.

164. Ci-Dell failed to provide Lutz with an election notice or any other notice under the COBRA.

165. Lutz has incurred damages as a result of Ci-Dell's failure to provide the election notice under the COBRA.

166. Lutz is entitled to recover all statutory damages, consequential damages, attorney's fees, and costs for Ci-Dell's violation of the COBRA.

## COUNT VI – WAGE CLAIM IN VIOLATION OF CHAPTER 109 OF THE WISCONSIN STATUTES

167. Lutz incorporates paragraphs 1 – 105 as if fully set forth herein.

168. Lutz and Ci--Dell agreed to the terms by which Lutz would be compensated for her work.

169. Lutz performed work for Ci-Dell from March through May 2, 2019 from home and Ci-Dell was aware that Lutz was performing work from home.

170. Ci-Dell refused to compensate Lutz for the work she performed from home from March 2019 through May 2, 2019.

171. Ci-Dell has violated Chapter 109 of the Wisconsin Statutes by failing and refusing to compensate Lutz for all hours worked.

172. Lutz is entitled to all unpaid wages, exemplary damages, and attorney's fees and costs.

## COUNT VII – BREACH OF CONTRACT

173. Lutz incorporates paragraphs 1 – 105 as if fully set forth herein.

174. Lutz and Ci-Dell agreed upon the amount of compensation Lutz would receive for performing work for Ci-Dell.

175. Ci-Dell paid Lutz appropriately for the hours she worked for Ci-Dell in accordance with their agreement until early March 2019.

176. Lutz performed work for Ci-Dell from March through May 2, 2019 from home and Ci-Dell was aware that Lutz was performing work from home.

177. Ci-Dell refused to compensate Lutz for the work she performed from home from March 2019 through May 2, 2019.

178. Lutz is entitled to all unpaid wages for this period of time.

## PRAYER FOR RELIEF

A. Grant a permanent injunction against the Defendant and its officers, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of disability, gender, age, or opposition to conduct made unlawful by the ADA, Title VII, and the ADEA.

B. Order the Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all genders, ages, and persons with disabilities, and all persons who oppose conduct made unlawful by the ADA, Title VII and the ADEA, and which eradicate the effects of its past and present unlawful employment practices.

C. Order the Defendant to compensate Lutz by providing appropriate back pay, front pay, liquidated damages, attorney's fees, and costs for its violation of the FMLA.

C. Order the Defendant to make whole Lutz by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.  Order the Defendant to make whole Lutz by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs in amounts to be determined at trial.

E.  Order the Defendant to make whole Lutz by providing compensation for past and future nonpecuinary losses, including, but not limited to, emotional pain, suffering, inconvenience and mental anguish resulting from the unlawful practices complained of in the foregoing paragraphs in amounts to be determined at trial.

F.  Order the Defendant to pay Lutz punitive damages for its intentional violation of the law.

G.  Order the Defendant to compensate Lutz for the attorney's fees and costs she has incurred as a result of brining this action.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMANDED

The Plaintiff, Debra Lutz, requests a jury trial on all questions of fact raised by this complaint.

Dated on this 15th day of March, 2021.    **MCDONALD & KLOTH, LLC**
Attorneys for Plaintiff

By: s/Shannon D. McDonald
Shannon D. McDonald
WI State Bar No. 1036954
Christopher M. Kloth
WI State Bar No. 1061498
MCDONALD & KLOTH, LLC
N96W18221 County Line Rd. #200
Menomonee Falls, WI 53051
Direct: (262) 252-9123
Office: (262) 252-9122
Fax:    (414) 395-8773
sdm@themklaw.com
cmk@themklaw.com